## W. E. Scobey v. The Town of Manteno.

1. PAUPERS—*Liability of Towns for Services Rendered.*—A town is not liable for the services of a surgeon, rendered to a poor person, resident of the town, at the request of the county physician, and not at the request of the overseer of the poor, or any other officer of the town.

Scobey v. Town of Manteno.

**Memorandum.**—Assumpsit for services. In the Circuit Court of Kankakee County, on appeal from a justice of the peace; the Hon. CHARLES R. STARR, Judge, presiding. Trial by jury; verdict and judgment for defendant; appeal by plaintiff. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

EDWARD E. DAY, attorney for appellant.

HARRISON LORING and WILLIAM POTTER, attorneys for appellee.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

While a freight train was standing at a street crossing on the Illinois Central railroad in the town of Manteno, Henry Cordiere, a resident of the town, attempted to cross the track by crawling under the cars.

Before he could pass under, the train started; he was caught by one of the car wheels and one of his legs was so badly injured as to render its amputation necessary. The conductor of the freight train put him on an approaching passenger train and sent him to Kankakee, nine miles distant, and telegraphed the station agent at Kankakee.

In response to a telephone message, the appellant and one Dr. Way, surgeon for the Illinois Central Railroad Company at Kankakee, appeared at the depot and took charge of Cordiere. Cordiere was removed to the county poor house where his leg was amputated by appellant, Dr. Way, and the county physician assisting in the operation. Cordiere was a common laborer, without means, and this suit was brought by appellant to recover from appellee $75 for performing the operation. A trial resulted in a verdict and judgment for appellee.

That Cordiere was a resident pauper of the town of Manteno is the theory on which a recovery is sought.

The evidence shows that he had never been a pauper charge up to the time of receiving the injury. He had for years worked in different lines of unskilled employment, earning from one dollar to a dollar and a half per day, but

had accumulated no property.   He did not come within the definition of pauper, but within the class mentioned in section 24 of the Pauper Act.   " Where any non-resident or any person not coming under the definition of a pauper of any county or town, shall fall sick, not having any money or property to pay his board, nursing and medical aid, the overseer of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper, subject to such rules and regulations as the county board may prescribe."   2 Starr and Curtis' Annotated Statutes, 1737.

Under the circumstances, as disclosed by the evidence, appellee was not liable.   The services were not performed upon the request of the overseer of the poor or any other officer of the town, nor within the town.   They were performed at the county poor house at the request of the county physician.

Appellant was called to the case in the first instance because he was the local surgeon for the railroad on which Cordiere had been injured, and when the patient was sent to the poor house, he went there and performed the amputation, because requested to do so by the medical attendant of the institution.

Whether the county is liable is not before us, and we do not desire to be considered as intimating any view upon that question.   We see nothing wrong with the instructions. Judgment affirmed.